International Union of Electrical and Machine Workers, A.F.L.–C.I.O. *v.* General Electric Company

Superior Court     Fairfield County     File No. 106569
at Bridgeport

Memorandum filed February 12, 1959

*Daniel Baker,* of Stamford, for the plaintiff.

*Marsh, Day & Calhoun,* of Bridgeport, for the defendant.

Troland, J. This is an application for an order directing arbitration under procedure authorized by § 52-410 of the 1958 Revision of the General Statutes. The plaintiff union and the defendant are parties to a written agreement for arbitration of grievances which applies, among other groups or units, to the production and maintenance employees of the defendant's Bridgeport works. The union is duly certified by the national labor relations board as the exclusive bargaining representative for said unit.

The grievance in question arose because General Electric decided to relocate the fan department manufacturing facilities in its Bridgeport works. In April, 1958, General Electric entered into a contract with an outside contractor in accordance with which all of the work of relocating the fan department production facilities would be done by about one hundred forty employees of an outside contractor and subcontractors. Plaintiff claimed that the plan to do this and the contract subsequently entered into for the work violated the terms of its agreement with the company. It submitted its grievance under the procedure established, and the grievance was denied by the company. The union thereafter submitted the grievance to arbitration and requested the American Arbitration Association to arrange the arbitration as provided in article XV of the agreement.

Pertinent provisions of article XV of the agreement provide: "[1] Any grievance which remains unsettled after having been fully processed pursuant to the provisions of Article XIII, and which involves either (a) the interpretation or application of a provision of this Agreement . . . shall be submitted to arbitration upon written request of either the Union or the Company . . . . [2] [b] It is further expressly understood and agreed that the American Arbitration Association shall have no authority to process a request for arbitration or appoint an arbitrator if either party shall advise the Association that such request arises under Section (a) of this Article, but that the grievance desired to be arbitrated does not, in its opinion, raise an arbitrable issue. In such event, the Association shall have authority to process the request for arbitration and appoint an arbitrator in accordance with its rules only after a final judgment of a Court has determined that the grievance upon which arbitration has been requested

raises arbitrable issues and has directed arbitration of such issues . . . ."

Article XXVI of the agreement reads as follows: "The parties recognize that, under this Agreement, each of them has responsibilities for the welfare and security of the employees: (a) The Company recognizes that it is the responsibility of the Union to represent the employees effectively and fairly; (b) Subject only to any limitations stated in this Agreement, or in any other agreement between the Company and the Union or a Local, the Union and the Locals recognize that the Company retains the exclusive right to manage its business including (but not limited to) the right to determine the methods and means by which its operations are to be carried on, to direct the work force and to conduct its operations in a safe and effective manner. This Article does not modify or limit the rights of the parties or of the employees, under any other provisions of this Agreement or under any other agreement between the Company and the Union or the Locals, nor will it operate to deprive employees of any wage or other benefits to which they have been or will become entitled by virtue of an existing or future agreement between the Company and the Union or a Local."

Plaintiff claims that the action of the company raises issues of interpretation and application of provisions of the agreement, viz., article I, § 1, which grants the union recognition as the exclusive bargaining representative of the unit; article VI, paragraph 5 (c) (4), which provides for ingrade progression of employees and first consideration for job openings; article XI, paragraph 1, which provides for layoff and rehiring of employees in accordance with seniority; article XIV, paragraph 2, which states the company will not lock out any employee or transfer any job under dispute from the local

works; and article IV, paragraph 1, which forbids the company to discriminate against any employee on account of union membership.

The company, for its answer to the writ, summons and complaint served upon it by the union, has filed a demurrer claiming that the controversy alleged by the plaintiff does not raise an arbitrable issue involving the interpretation or application of a provision of the agreement within the meaning of article XV of said agreement; that it appears from said agreement that there is no provision of said agreement which either expressly or impliedly prohibits the defendant from contracting out the work of relocating production facilities; that plaintiff's claims as set forth are claims of law and invalid on their face as a matter of law; and that under the terms of the agreement the defendant retained the exclusive right to manage its business, which right, it maintains, includes the right in its sole discretion to contract out to outside contractors the work of relocating production facilities as alleged in paragraph 9 of plaintiff's application.

The demurrer of the defendant was filed within the time limited by the statute, and is a proper "answer" to the allegations of the complaint, as, however called, it challenges the legal sufficiency of the complaint and maintains that the plaintiff is not entitled to the remedy sought on its allegations. *Arsenault* v. *General Electric Co.*, 20 Conn. Sup. 413.

Orderly procedure will better be served by first disposing of legal questions addressed to the authority of an arbitrator to act. *International Brotherhood of Teamsters* v. *Shapiro*, 138 Conn. 57, 65. The arguments of the parties were long, their briefs are heavy and exhaustive and the citations are multitudinous. After a weary journey, the trier emerges into a twilight zone illuminated in part by lesser

and in part by greater lights. By the light that shines brightest the following appears to me: (1) Arbitration is favored in Connecticut. *Gaer Bros., Inc.* v. *Mott,* 144 Conn. 303, 307. (2) The forum selected by the parties should hear and determine their grievances. *Colt's Industrial Union* v. *Colt's Mfg. Co.,* 137 Conn. 305, 309. (3) Disputes of this general nature are arbitrable only by agreement. Ibid. (4) The parties have limited arbitration by their agreement and are bound by the limits they have themselves fixed. *Pratt, Read & Co.* v. *United Furniture Workers,* 136 Conn. 205, 209. (5) The question of arbitrability of a dispute under the agreement in this case is expressly stipulated to be one for a court. (6) The decision of the court on this question should be determined on the contract and not be influenced by its notion as to the merits of the case. (7) This question may be decided on a demurrer to the application, in an appropriate case. (8) The union in this action represents production and maintenance workers at the Bridgeport plant. Maintenance work is the daily routine, normal, customary, regular work of maintaining machinery, equipment and premises in working order, for which a steady crew of employees is engaged. (9) The relation of employer and employee is one of contract. What is within the terms of the contract is governed by it. What is without the terms of the contract is unaffected by it. Both the employer and the employee have complete freedom in this unaffected field. *Amalgamated Assn.* v. *Greyhound Corporation,* 231 F.2d 585, 587.

The company, by carefully worded provisions of the agreement, has specifically reserved to it the following: "Subject only to any limitations stated in this agreement, or in any other agreement between the Company and the Union or a Local, the Union and the Locals recognize that the Company

retains the exclusive right to manage its business, including (but not limited to) the right to determine the method and means by which its operations are to be carried on, to direct the work force and to conduct its operations in a safe and effective manner." However stated in the complaint, there is but one real question involved. It is: Has General Electric the right to give the job of relocating its fan department to an outside contractor and his subcontractors? It is for the court to determine as a matter of law whether the contract contains a provision for arbitration of the dispute tendered. *Chase Brass & Copper Co.* v. *Chase Brass & Copper Workers Union,* 139 Conn. 591, 595; *International Assn. of Machinists* v. *Cutler-Hammer, Inc.,* 271 App. Div. 917, aff'd, 297 N.Y. 519; *Local No. 149, American Federation of Technical Engineers* v. *General Electric Co.,* 250 F.2d 922, 930. The right to the arbitration of unresolved disputes is restricted and limited to those involving the violation or interpretation of contract terms. The parties have a right to stand upon the precise terms of their agreement and are bound only to the extent to which they have expressly agreed. *Standard Refinery Union* v. *Esso Standard Oil Co.,* 31 N.J. Super. 548, 551.

There is no provision in the contract relating to new construction or the erection of additional facilities, or whereby the company has given up its managerial right to contract for such work, or whereby the company has confided to arbitrators the right to review its business judgment in so doing. There is no provision in the agreement here to warrant a conclusion that the company has agreed to arbitrate the question of the arbitrability of the grievance set forth in the complaint. Indeed, this question is specifically provided for by the provision that arbitration be proceeded with "only after a final judgment of a Court has determined that the grievance upon

which arbitration has been requested raises arbitrable issues and has directed arbitration of such issues."

The dispute or grievance stated in the complaint and as admitted by the demurrer is not an arbitrable dispute under the agreement. There is nothing to arbitrate. *Standard Refinery Union* v. *Esso Standard Oil Co.*, supra, 552; *Amalgamated Assn.* v. *Greyhound Corporation*, supra; *Matter of General Electric Co. (United Electrical Radio & Machine Workers of America C.I.O.)*, 300 N.Y. 262, 264.

The demurrer is sustained.